## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DABROWSKI, et al., | ) | CASE NO. 5:14CV569 |
| | ) | |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| THE CITY OF TWINSBURG, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 11 ["MTD"]), plaintiffs' memorandum in opposition (Doc. No. 12 ["Opp."]), and defendants' reply (Doc. No. 13 ["Reply"]). For the reasons set forth herein, the motion is granted and this case is dismissed.

### I. STANDARD ON A MOTION TO DISMISS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

## II. DISCUSSION

Plaintiffs, John Dabrowski and Johnstown Maintenance, LLC d/b/a Twinsburg Public Safety and Firearms, filed this action on February 13, 2014 in the Summit County Court of Common Pleas. On March 17, 2014, defendants, City of Twinsburg, Katherine Procop, and David Maistros, removed the action to this Court on the basis of the Fourteenth Amendment claims. Plaintiffs filed the first amended complaint (Doc. No. 10 ["FAC"]) on April 18, 2014. On May 2, 2014, defendants filed their motion to dismiss.

**A.    Allegations in Plaintiffs' First Amended Complaint**

Plaintiff John Dabrowski ("Dabrowski") is the owner of plaintiff Johnstown Maintenance, LLC d/b/a Twinsburg Public Safety and Firearms ("Twinsburg Firearms"). (FAC ¶

2.) Defendant Katherine Procop ("Procop") is the mayor of defendant City of Twinsburg ("the City"), and defendant David Maistros ("Maistros") is the City's law director. (*Id.* ¶¶ 6, 7.)[1]

In November 2012, Dabrowski began the process of opening Twinsburg Firearms at a location on Ravenna Road in Twinsburg, Ohio. He and his attorney met with Maistros to determine the procedure to follow and to discuss the zoning issues. (*Id.* ¶¶ 8, 9.) After Dabrowski was advised in December 2012 that the initial location would not be approved, he found a new location on Ravenna Road and, in January 2013, submitted a new zoning application. The City issued the zoning permit to Dabrowski on March 11, 2013. (*Id.* ¶¶ 10, 11, 12.) Relying on the zoning permit, Dabrowski applied to the Bureau of Alcohol, Tobacco, and Firearms for a federal firearms license, which was granted. (*Id*. ¶ 13.) Dabrowski then installed a temporary sign on the new business location. It was at that time he was informed that he was not approved for occupancy. (*Id*. ¶ 14.) On May 3, 2013, Dabrowski applied to the City for an occupancy permit; it was granted at "the end of June of 2013" and he opened Twinsburg Firearms on July 20, 2013. (*Id.* ¶16.)

While this process was unfolding, Dabrowski entered into a lease for the Ravenna Road premises with Vince and Dan D'Agostino. (*Id.* ¶ 17.) Dabrowski claims that his landlords were contacted on May 20, 2013 by Councilwoman Maureen Stauser, a non-party to this lawsuit, who purportedly asked them "what would it take to break the lease[.]" (*Id*. ¶ 18.) On that same day, when Dabrowski contacted the zoning inspector to seek an inspection of his property, he was advised that no inspection would be conducted. (*Id.* ¶ 19.) Plaintiffs also allege that, at a

---

[1] The complaint names Procop and Maistros as defendants, but fails to state whether they are sued in their individual and/or official capacities. Although "§ 1983 plaintiffs should set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply their capacity as state officials[,]" *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) (internal quotation marks and citation omitted), failure to do so "is not necessarily fatal to the lawsuit." *Id*.

time not specified in the complaint, Mayor Procop "was on the news with Channel 5 and 19, indicating the Plaintiff's failure to comply with City Ordinances in opening his store[.]" (*Id.* ¶ 20.)

Based on these factual allegations, the first amended complaint pleads four causes of action: tortious interference with business contract, violation of procedural due process, violation of substantive due process, and violation of Ohio Rev. Code § 9.68.

**B.    Analysis**

**1.    Tortious Interference with Contract (First Cause of Action)**

"The elements of the tort of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E. 2d 853, 855 (Ohio 1999), paragraph one of the syllabus.

Here, the first cause of action alleges that the City "has interfered with a business contract between the Plaintiff and his Landlords in *attempting to breach* that contract and by not allowing the Plaintiff to open his business in a timely manner." (FAC ¶ 23, emphasis added.) There is no allegation of an actual procurement of a contract breach. Rather, the complaint alleges, which the Court will take as true for purposes of the motion to dismiss, that a non-party council member inquired of Dabrowski's landlords as to what it would take to break the lease. There is no allegation that any of the named defendants were involved in this inquiry and nothing to link the inquiry to the named defendants. Moreover, since the lease was never broken and Twinsburg Firearms is actually in the leased space to this day, plaintiffs cannot satisfy all of the required elements of the tort.

4

Accordingly, defendants are entitled to dismissal of the first cause of action.[2]

**2.     Fourteenth Amendment Violations (Second and Third Causes of Action)**

In the second and third causes of action, plaintiffs allege that defendants violated their procedural and substantive due process rights under the Fourteenth Amendment. They do not allege that these claims are brought pursuant to 42 U.S.C. § 1983; however, the Court construes the complaint in that fashion. The second cause of action specifically alleges that the City "has not complied and followed their procedures in allowing a review of the Plaintiff's application for occupancy and allowing him to open in a timely fashion." (FAC ¶ 27.) The third cause of action merely alleges generally that "Defendants' actions as stated herein [sic] this complaint constitute a breach of substantive due process." (*Id.* ¶ 30.)

The Fourteenth Amendment to the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV § 1. "The due process clause has both procedural and substantive components[.]" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (citing *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)). "When a person holds a property or a liberty interest, procedural due process generally requires that the state provide that person with notice and an opportunity to be heard before depriving the person of that interest." *Klimik v. Kent Cnty. Sheriff's Dep't*, 91 F. App'x 396, 402 (6th Cir. 2004) (citation omitted). The substantive component of the due process clause "bars certain governmental actions regardless of any observance of procedural niceties." *Ellsworth v. City of Lansing*, 205 F.3d 1340 (Table), 2000 WL 191836, at *4 (6th Cir. 2000). "To establish either a substantive or procedural due process

---

[2] Defendants also argue that they are statutorily immune under Ohio Rev. Code § 2744.02(A)(1). Plaintiffs do not address this argument in their opposition brief. Because the first cause of action fails to state a claim upon which relief can be granted, the Court need not address the question of immunity.

violation, [a plaintiff] must first show that [the defendant] deprived it of a constitutionally protected liberty or property interest." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002) (citing *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)).

Although plaintiffs do not state what form of protected interest undergirds their claims, the context of the complaint suggests that they are alleging deprivation of a property interest; more specifically, plaintiffs appear to be asserting that what they perceive as a delay in issuing the occupancy permit constitutes deprivation of a property interest.

"Whether a person has a 'property' interest is traditionally a question of state law." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982)). "However, '. . . *federal constitutional law* determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.'" *Id.* (quoting *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 757, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005) (emphasis in original) (internal quotation marks omitted)).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). A party cannot have a property interest in a discretionary benefit. *EJS Props.,* 698 F.3d at 857. The Sixth Circuit has "recognized that a party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Id.* (citing cases).

6

Plaintiffs have not identified any basis to claim a property interest in an occupancy permit. Furthermore, even assuming for the sake of argument that they had such an interest, they have not alleged that they were *denied* a permit; rather, they seem to be arguing only that their occupancy permit was, in their view, delayed. But they have not pointed to any authority for the proposition that mere delay can form the basis of their constitutional claims. Furthermore, some of the delay, by their own admission, was caused by their failure to timely apply for the occupancy permit, apparently under the mistaken belief that a zoning permit was sufficient.

Nor can plaintiffs point to any right related to their contract with their landlords as the underlying property right. Although the right to contract is a property right in Ohio, *see Caldwell v. Baltimore & Ohio Ry. Co.*, 14 Ohio Dec. 375, 1904 WL 730, at *5 (Ohio Com. Pl. 1904), plaintiffs have not been deprived of any such right. Plaintiffs do not deny that their lease with the D'Agostinos remains intact and Twinsburg Firearms is open to this day.

In their brief in opposition to the motion, plaintiffs argue that they have "a simplistic argument [that] clearly refutes and defeats the motion to dismiss[,]" namely, that they "have stated claims for the violation of the Second Amendment—the right to bear arms." (Opp. at 102.) This is simply not so; there is not a single mention of the Second Amendment or the right to bear arms in the FAC. Moreover, even had plaintiffs been *denied* a zoning and/or occupancy permit, that would simply not implicate the Second Amendment's right to bear arms. Further, as properly pointed out by the defendants in their reply, the Second Amendment restricts only the federal government. (Reply at 111-12, citing *District of Columbia v. Heller*, 554 U.S. 570, 620, n.23, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008); *Presser v. Illinois*, 116 U.S. 252, 265, 6 S. Ct. 580, 29 L. Ed. 615 (1886).)

7

Absent a showing of any property interest of which plaintiffs have been deprived, they have failed to state claims for procedural and/or substantive due process violations, and defendants are, therefore, entitled to dismissal of the second and third causes of action.

**3.      Ohio Rev. Code § 9.68 (Fourth Cause of Action)**

Plaintiffs allege that defendants "violated Ohio Revised Code Section 9.68 with not issuing the occupancy permit after the zoning permit was granted." (FAC ¶ 33.)

Ohio Rev. Code § 9.68 deals with the right of an individual to possess a firearm. It provides, in relevant part:

(A)     The individual right to keep and bear arms, being a fundamental individual right that predates the United States Constitution and Ohio Constitution, and being a constitutionally protected right in every part of Ohio, the general assembly finds the need to provide uniform laws throughout the state regulating the ownership, possession, purchase, other acquisition, transport, storage, carrying, sale, or other transfer of firearms, their components, and their ammunition. Except as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, without further license, permission, restriction, delay, or process, may own, possess, purchase, sell, transfer, transport, store, or keep any firearm, part of a firearm, its components, and its ammunition.

(B)     In addition to any other relief provided, the court shall award costs and reasonable attorney fees to any person, group, or entity that prevails in a challenge to an ordinance, rule, or regulation as being in conflict with this section.

Plaintiffs are not challenging the constitutionality of § 9.68. Rather, they are trying to claim that the statute was somehow violated because they were not granted an occupancy permit at a speed they found acceptable. But by its own terms, the statute does not apply to either of the following:

(1)     A zoning ordinance that regulates or prohibits the commercial sale of firearms, firearm components, or ammunition for firearms in areas zoned for residential or agricultural uses;

8

(2)     A zoning ordinance that specifies the hours of operation or the geographic areas where the commercial sale of firearms, firearm components, or ammunition for firearms may occur, provided that the zoning ordinance is consistent with zoning ordinances for other retail establishments in the same geographic area and does not result in a de facto prohibition of the commercial sale of firearms, firearm components, or ammunition for firearms in areas zoned for commercial, retail, or industrial uses.

Ohio Rev. Code § 9.68(D).

In their opposition brief, plaintiffs argue that defendants subjected them to "differential treatment" (seemingly a reference to the consistent treatment requirement of § 9.68(D)(2)) which is "tantamount to a violation of the statute." (Opp. at 100.) Plaintiffs point to *City of Cleveland v. State of Ohio*, 942 N.E. 2d 370 (Ohio 2010) and *Ohioans for Concealed Carry, Inc. v. City of Clyde*, 896 N.E. 2d 967 (Ohio 2008) as authority for their argument that § 9.68 "supersede[s] any local ordinances[ ]" and "restrict[s] . . . municipalities[.]" (Opp. at 99.) Neither case applies here.

In *City of Cleveland*, prior to the enactment of Ohio Rev. Code § 9.68, Cleveland "enacted several [local] ordinances regulating firearms, including Cleveland Codified Ordinances 627.08 (possession of firearms by minors), 627.09 (possessing deadly weapons on private property), 627.10 (possessing certain weapons at or about public places), 627A.02 (access to firearms, prohibiting children's access to firearms), 628.03 (unlawful conduct, prohibiting possession and sale of assault weapons), and 674.05 (registration of handguns)." 942 N.E. 2d at 373. Cleveland filed a complaint against the State of Ohio seeking a declaration that § 9.68 was an unconstitutional infringement on its home rule powers. The Ohio Supreme Court rejected the argument, concluding that § 9.68 "is a general law that *displaces municipal firearm ordinances* and does not unconstitutionally infringe on municipal home rule authority." *Id.* at 371, syllabus (emphasis added). This case has nothing to do with zoning ordinances; rather, it

9

dealt with whether a municipality had the authority to restrict a person's right to bear arms, in the face of the state statute providing that only federal or state laws could do so.

Similarly, in *Ohioans for Concealed Carry*, a group of citizens challenged a local ordinance prohibiting licensed handgun owners from carrying concealed handguns in city parks. The Ohio Supreme Court concluded that the local ordinance was unconstitutional because it conflicted with Ohio Rev. Code § 2923.126, a general law governing where a licensed gun owner could carry a concealed handgun. Again, this case has no applicability.

Plaintiffs summarize their own argument as follows:

Having complied with all applicable laws, Plaintiffs had to be treated in an equal manner as other business owners, who do not deal in firearms. The city may not zone hours of operation or geographic areas where the commercial sale of firearms may occur when such is inconsistent with zoning ordinances for other retail establishments, i.e., hardware stores, department stores, etc. Likewise, the city may not--in areas which are properly zoned for commerce and retail sales (industrial, too)--prohibit the commercial sale of firearms, their components, and ammunition. This is exactly what the city and the individual Defendants *attempted to do. Having delayed the Plaintiffs from opening and operating their store*, the Defendants are liable for the Plaintiffs' losses as well as their statutory damages, including legal fees.

The Plaintiffs have stated viable claims against the Defendants for violation of R.C. 9.68.

(Opp. at 100-01.) Plaintiffs are not challenging the constitutionality of the City's zoning ordinances. They are merely complaining about a perceived delay in obtaining an occupancy permit. And, although they declare that the City cannot treat them differently than other retail establishments, they point to no facts that would tend to suggest they received different treatment.

As properly noted by defendants in their reply brief, plaintiffs' argument with respect to this statute "defies logic and understanding." (Reply at 110.) The statute simply does

10

not apply to zoning disputes unless the zoning ordinance results in a "de facto prohibition of the commercial sale of firearms[.]" Ohio Rev. Code §9.68(D)(2). That did not happen here.

        This claim has no basis in law or fact. Defendants are entitled to dismissal of the fourth cause of action.

### III. CONCLUSION

        For the reasons set forth herein, defendants' motion to dismiss (Doc. No. 11) is **GRANTED** and the case is dismissed.

        **IT IS SO ORDERED**.

Dated: November 10, 2014                                 _____

                                       **HONORABLE SARA LIOI**
                                     **UNITED STATES DISTRICT JUDGE**